UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PAUL FELCH, | ) |
| Plaintiff, | ) No. CV-05-0148-CI<br>) |
| v. | ) ORDER DENYING PLAINTIFF'S<br>) MOTION FOR SUMMARY JUDGMENT<br>) AND DIRECTING ENTRY OF |
| JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security, | ) JUDGMENT FOR DEFENDANT<br>)<br>) |
| Defendant. | )<br>) |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 9, 13) submitted for disposition without oral argument on December 12, 2005. Attorney Lora Lee Stover represents Plaintiff; Special Assistant United States Attorney David R. Johnson represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 2.) After reviewing the administrative record and the briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment and directs entry of judgment for Defendant.

Plaintiff, 42-years-old at the time of the administrative decision, filed a second application for Social Security disability on March 13, 2002, alleging disability as of January 1, 1999, due to

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT   - 1

irregular heart rhythm. (Tr. at 20.) Plaintiff had less than a high-school education and past relevant work as a self-employed landscape worker. Following a denial of benefits at the initial stage and on reconsideration, a hearing was held before Administrative Law Judge Mary B. Reed (ALJ). The ALJ denied benefits; review was denied by the Appeals Council. This appeal followed. Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

**ADMINISTRATIVE DECISION**

The ALJ concluded that Plaintiff had a limited education and his landscaping work after the alleged onset date did not constitute substantial gainful activity. (Tr. at 20, 21.) Plaintiff was found insured for disability benefits through the date of the ALJ's decision. Plaintiff suffered from cardiac arrhythmias and atrial fibrillation with implantation of a pacemaker, musculoskeletal pain associated with implantation of the pacemaker, and gastroesophageal reflux disease (GERD). (Tr. at 26.) The impairments were not found to meet the Listings. The ALJ rejected Plaintiff's testimony as not fully credible. (Tr. at 27.) The ALJ concluded Plaintiff retained the residual capacity to perform a limited range of light exertion and was precluded from performing past relevant work. Plaintiff was found to be able to perform other work such as assembler, hand packager, and packaging and filling machine operator. (Tr. at 31.) The ALJ concluded Plaintiff was not disabled.

**ISSUES**

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards.

Plaintiff contends the ALJ improperly (1) assessed his residual functional capacity and pain complaints in light of the findings of the agency's expert, Dr. Robert A. Stier; (2) rejected Plaintiff's testimony as not credible; and (3) posed an inaccurate and incomplete hypothetical to the vocational expert.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT   - 3

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

**ANALYSIS**

**1. Dr. Stier's Opinion**

Plaintiff contends the ALJ's conclusions are in conflict with the opinion rendered by consultant Dr. Robert A. Stier, who testified at the hearing on behalf of Defendant. Defendant notes Dr. Stier testified Plaintiff's pacemaker was doing "admirably well," that his electrocardiograph was within normal limits, and that if Plaintiff did not overexert, he would do "all right." (Tr. at 544-548.) Defendant further notes Dr. Stier stated Plaintiff could occasionally lift and carry 20 pounds, frequently lift ten pounds, should avoid hazardous machinery, exposure to high magnetic or electrical fields, and pulmonary irritants. (Tr. at 551-552.)

Dr. Stier, who testified at the administrative hearing, was a consulting physician whose opinion was based on his review of Plaintiff's medical records. (Tr. at 543.) Dr. Stier noted

Plaintiff had "all kinds" of physical impairments, including palpitations and injury of his right shoulder. (Tr. at 545.) Chronic and increasing flutter fibrillation lead to the installation of a heart pacemaker in 2002. Dr. Stier noted the onset of Plaintiff's flutter fibrillation was gradual, beginning in January 1999, and becoming sufficiently serious and permanent in late 2001, early 2002 to require a pacemaker. (Tr. at 555-556.) His post pacemaker echocardiograms were within normal limits. Plaintiff also had a history of hypothyroidism and GERD, childhood asthma no longer symptomatic except with exposure to some irritants, and residual pain and swelling from a right shoulder injury. (Tr. at 549.)

Dr. Stier noted Plaintiff had a cap on his ability to engage in exertional activity because of the pacemaker limitations. He further stated Plaintiff could occasionally lift 50 pounds, frequently lift 20 pounds but carry it only short distances, sit for six of eight hours, and stand and walk six of eight hours with intermittent rest periods. Plaintiff would be limited in climbing ropes, stairs or ladders, should avoid situations where sudden exertion is involved, and not be around hazardous machinery or machinery with a high magnetic field. (Tr. at 550-552.)

The ALJ considered Dr. Stier's opinion and noted:

> Robert A. Stier, M.D., an internist, appeared and testified at the hearing as a medical expert. He testified that his review of the medical evidence of record, considered in its entirety, established that the claimant had a history of right shoulder injury and a history of intermittent atrial flutter, with EKGs within normal limits. On exercise testing in 1997, flutter showed up after 11 minutes and at rest. The claimant was put on a Beta Blocker and then underwent pacemaker implantation in 2002, with subsequent ablation. All physical examinations have shown lungs clear, no heart murmurs or abnormal sounds, and no edema. The claimant reported chest pain with exercise, but there was no

> evidence of coronary insufficiency and no elevated cardiac enzymes. The claimant suffers from arrhythmias with good left ventricular function. The claimant also suffers from mild gastroesophageal reflux disease, improved with medications, and he experiences some swelling of the supraclavicular area associated with inflammation of the packet containing the pacemaker. The claimant was considered to be able to lift 50 pounds occasionally and 20 pounds frequently, sit six hours in an eight hour work day, stand and walk less than six hours in an eight hour work day (although the stress test indicates the claimant could stand walk six hours in an eight hour workday). The claimant was unable to climb ropes, ladders, or scaffolds, or engage in activities requiring sudden exertion or exposure to quick moving machinery, exposure to hazards or dangerous machinery, or exposure to high magnetic or electric fields or microwaves. He could occasionally climb stairs and ramps. The record also evidenced that the claimant had a short history of childhood asthma, without recurrence. If the claimant's asthma recurred (although the record does not evidence that it is present), the claimant would also avoid exposure to cold, humidity and dust.

(Tr. at 25-26.) Thus, the ALJ considered all of the limitations observed by Dr. Stier.

In posing the hypothetical to the vocational expert, the ALJ further reduced the lifting and carrying weights to 20 pounds occasionally and ten pounds frequently. (Tr. at 614.) Based on these limitations, the expert concluded Plaintiff could perform a limited range of sedentary and light work, including specific jobs which were available in significant numbers in the national economy. (Tr. at 614.) Having included all of the limitations described by Dr. Stier, there was no error when the ALJ concluded Plaintiff was not disabled.[1]

---

[1] Plaintiff has not challenged Dr. Stier's testimony as being inconsistent with other evidence in the medical record. (Ct. Rec. 11 at 10.) This court's review of the medical record does not disclose any inconsistencies as to Dr. Stier's opinion.

**2.   Credibility**

Plaintiff contends the ALJ erred when he rejected his testimony as not credible. The ALJ noted in her opinion:

> The claimant was not considered to be credible. The record reflects many inconsistencies, particularly concerning the claimant's work activity. The claimant has variously reported that he ceased working in January of 1999, in January of 2001, in April of 2002, and he reported that, in 2003, he was limited to driving his wife and son to the lawn jobs. The claimant reported he had to turn down work due to his inability to perform his job, however, the claimant's tax returns and his Earnings Record indicate that the claimant's self-employment income increased after 1999. Although the claimant reported that he was unable to continue to assist with snow removal in 2001, it is noted that he purchased two more lawn mowers and a snow blower in 2001. The claimant's reports to physicians concerning his work activity are inconsistent with his statements made in conjunction with his pursuit of benefits. These conflicts are detailed above in this decision. It is noted that the claimant has reported that his wife and son did all of the labor, however, his wife was also employed during a period of time at issue. It is also noted that the claimant testified he had a history of being paid "under the table" for his work activity, and that he received welfare benefits in some years. The claimant's statements concerning his use of alcohol are inconsistent with medical records evidencing persisting use of alcohol, associated with abdominal pain. The claimant's reports concerning his education are not supported by the school records. The claimant's statements of severe fatigue precluding his ability to perform any exertion are inconsistent with the claimant's ability to continue to hunt and hike and with the medical records and are unsupported by the results of thorough evaluations. On treadmill testing in September of 2001, the claimant exercised 11 minutes, stopping only due to leg fatigue. Treadmill testing in February of 2002 was reported to be normal, as well. The claimant reports worsening symptoms, however, he was released by his cardiologist on July 22, 2002, with no follow-up visit scheduled.
>
> The record evidences that the claimant reported that his chest pain had resolved in April of 1998 and he alleges that he became disabled on January 1, 1999 or on January 28, 2001, although the record does not evidence a change in condition after April of 1998 and the claimant did not seek any medical care between April of 1998 and August of 2001, other than treatment for gastroesophageal reflux symptoms associated with consuming alcohol in July of 1999. The claimant reported he ceased work activity in

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT  - 7

April of 2002, apparently coincident with implantation of the pacemaker on April 12, 2002. However, the claimant himself reports improvement in his symptoms following surgery, and the treating specialists all reported significant improvement in the claimant's condition following the surgery. It is noted that the claimant's chest discomfort was attributed to gastroesophageal reflux which was also associated with continued chocolate consumption, although the claimant was chocolate intolerant and lactose intolerant. The claimant's gastroesophageal reflux symptoms were also associated with consumption of alcohol, recurring primarily with use of alcohol. Although the claimant has reported tiredness with any activity, treadmill testing did not support this significant exercise intolerance. The claimant's statements concerning the frequency and duration of his symptoms are inconsistent. The claimant's reported functional restrictions, including his inability to walk more than 1 hour, stand more than 2 hours or sit more than 3 hours, are inconsistent with his ability to continue to hunt, camp and hike. Observations by an examining physician in July of 2001 that the claimant's hands were calloused with ground in dirt are inconsistent with his statements concerning his inability to perform any work. In July of 2001, the claimant reported he had last seen Dr. Orme, his treating physician, more than one year ago, and the following month, on presentation to Dr. Orme, it was noted it had been two years since the claimant had presented to Dr. Orme.

The claimant's presentation to physicians has been primarily coincident with his pursuit of Social Security benefits. The claimant first presented with symptoms in 1996, followed by extensive evaluation, and reported resolution of symptoms by April of 1998. The claimant did not return to a physician thereafter, other than for treatment of exacerbation of gastroesophageal symptoms associated with consuming alcohol, until subsequent to filing an application for benefits in June of 2001. At that time, the claimant underwent a consultative examination, after which he finally returned to a treating physician, Dr. Orme, for the first time in two years. The claimant underwent evaluation and he, again, did not followup subsequent to September of 2001 and prior to filing another application for Social Security benefits. The claimant's failure to seek treatment during that time is inconsistent with his varying reports of significant worsening of his symptoms such that he became unable to sustain activity, even simply driving the truck, throughout a workday.

(Tr. at 27, 28 (references to exhibits omitted).)

In deciding whether to admit a claimant's subjective symptom

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT  - 8

testimony, the ALJ must engage in a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step, see *Cotton v. Bowen*, 799 F.2d 1403, 1405 (9th Cir. 1986), the claimant must produce objective medical evidence of underlying "impairment," and must show that the impairment, or a combination of impairments, "could reasonably be expected to produce pain or other symptoms." *Id.* at 1281-82. If this test is satisfied, and if there is no evidence of malingering, then the ALJ, under the second step, may reject the claimant's testimony about severity of symptoms with "specific findings stating clear and convincing reasons for doing so." *Id*. at 1284. The ALJ may consider the following factors when weighing the claimant's credibility: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his/her] testimony and [his/her] conduct, [claimant's] daily activities, [his/her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). If a reason given by the ALJ is not supported by the evidence, the ALJ's decision may be supported under a harmless error standard. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (applying the harmless error standard)*; Booz v. Sec'y of Health and Human Serv.*, 734 F.2d 1378, 1380 (9th Cir. 1984) (same). There is no evidence of malingering; thus, Plaintiff's testimony must be rejected with clear and convincing reasons. Additionally, there is objective evidence

to support diagnoses of heart impairment and GERD; both could be reasonably expected to produce symptoms of pain and fatigue. Thus, the first prong of *Smolen* has been satisfied.

Plaintiff does not offer this court any specific argument as to which of the credibility findings were not supported by the record. (Ct. Rec. 11 at 14.) Plaintiff contends he suffers from a decreased ability to concentrate and maintain activity over time; yet there are no objective psychological records to support that contention. Based on Dr. Stier's assessment, although Plaintiff suffers from a serious heart impairment, his condition has stabilized with the insertion of a pacemaker. None of his treating physicians have opined he is disabled.

Here, the ALJ relied on Plaintiff's inconsistent report of his work history, the fact no treating physician concluded he was fully disabled, medical records which indicated his heart condition had stabilized with treatment, the lack of ongoing medical treatment during the period of alleged disability, and Plaintiff's reported daily activities. The record supports the ALJ's conclusion Plaintiff's work history was inconsistent as to the date he was unable to work. Plaintiff reported he was using the weed whacker and mowing lawns in 2000, 2001, that he took time off to heal after insertion of the pacemaker in 2002, but had improved since then. (Tr. at 573-586.) He reported to Dr. Rubin in 2001 that he was involved in mowing 16 lawns in one day. (Tr. at 356.) Plaintiff continued to hunt, fish, did housework, laundry and vacuuming, and cut wood for his personal use. (Tr. at 576, 587, 589.) Plaintiff also reported he was paid "under the table" while collecting welfare benefits. (Tr. at 604-605.) Objective medical tests following the

insertion of the pacemaker were normal and no follow-up medical care was required. (Tr. at 410, 484, 497.) Plaintiff did not visit a cardiologist for two years during the alleged period of disability. (Tr. at 440.) Thus, Plaintiff's daily activities, the objective medical evidence, and inconsistent statements provide clear and convincing reasons to reject Plaintiff's testimony as not fully credible. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 9)** is **DENIED.**

2. Defendant's Motion for Summary Judgment dismissal **(Ct. Rec. 13)** is **GRANTED**; Plaintiff's Complaint and claims are **DISMISSED WITH PREJUDICE.**

3. The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. The file shall be **CLOSED** and judgment entered for Defendant.

DATED January 17, 2006.


                S/ CYNTHIA IMBROGNO
          UNITED STATES MAGISTRATE JUDGE